IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HYATT CORPORATION, d/b/a HYATT REGENCY CHICAGO, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. |
| UNITE HERE, LOCAL 1, | ) ) ) |
| Defendant. | ) |

**COMPLAINT**

Plaintiff, HYATT CORPORATION, d/b/a HYATT REGENCY CHICAGO ("HRC" or "Hotel"), complains of Defendant UNITE HERE, LOCAL 1 ("Union" or "Local 1") and alleges as follows:

**NATURE OF THE ACTION**

1. HRC seeks to vacate the arbitration Decision and Award issued by Arbitrator Peter Meyers, dated March 12, 2019 ("Meyers Award"), a copy is attached as **Exhibit A**, because the arbitrator reached conclusions contrary to the express terms of the parties' collective bargaining agreement, the arbitrator administered his own brand of industrial justice, the award directly conflicts with the arbitrator's own findings and with a similar, separate arbitration award, and the award does not draw its essence from the collective bargaining agreement.

2. HRC also seeks to confirm the final and binding arbitration Opinion and Award by Arbitrator Ann S. Kenis dated June 20, 2018 ("Kenis Award"), a copy is attached as **Exhibit B,** which the Union has failed to enforce and follow.

**JURISDICTION & VENUE**

3. HRC brings this action pursuant to Section 301 of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. §185.

4. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1331 and 29 U.S.C. § 185(c)).

5. HRC is an employer in an industry affecting commerce within the meaning of Section 301 of the LMRA and provides hotel, convention, and banquet services in Chicago, Illinois.

6. The Union is a labor organization within the meaning of Section 301 of the LMRA which maintains its principal office in Chicago, Illinois and is the collective bargaining representative of various employees employed by HRC.

**FACTS**

7. Local 1 and HRC were parties to a collective bargaining agreement effective September 1, 2013 through August 31, 2018 ("CBA"), attached as **Exhibit C**.

8. Section 46 of the CBA sets forth the procedure for the adjustment of grievances arising under the CBA and provides, in part, that grievances not settled between HRC and the Union shall be submitted to final and binding arbitration and except as otherwise set forth in the CBA, requires the arbitrator to follow the Labor Arbitration Rules of the American Arbitration Association ("LAR AAA"). Ex. C p. 41.

9. Both the Kenis Award and the Meyers Award resolved grievances filed by the Union charging HRC with violations of Section 56 of the CBA which provides "[s]upervisory personnel shall not perform work normally performed by bargaining unit employees

except in the case of emergency."

## COUNT I
## SUIT TO VACATE MEYERS AWARD

10. Plaintiff incorporates paragraphs 1, and 3 through 9 as paragraph 10 as if fully alleged herein.

11. The Meyers Award was issued in response to two single event grievance filings, each listing a single violation date, and on the basis that the grievance alleged that the incidents were ongoing and continuous, was expanded by the arbitrator over the objection of HRC to include more than 200 separate incidents spanning a period of October 2, 2014 through February 23, 2016.

12. The Meyers Award is 260 pages in length and was issued following the conclusion of twenty-five evidentiary hearing dates beginning December 14, 2015 and ending January 18, 2018 ("Meyers Arbitration").

13. In response to HRC's July 10, 2015 information request seeking information about the allegations involved in the Meyers Arbitration, the Union provided HRC a series of spreadsheets generally describing the claims with the first spreadsheet being served September 18, 2015 and listing just 46 claims; the second disclosure, served the afternoon of the day before the Thanksgiving holiday, containing approximately 100 claims; and the third disclosure, served less than one week before the first scheduled hearing date of December 14, 2015, containing more than 200 claims.

14. Although the arbitrator found the Union's prehearing disclosures lack of detailed information about the incidents were "by design," he refused to offer HRC any relief for

3

the Union's failure to comply with HRC's request for information because the CBA does not contain any provisions that address discovery or the exchange of information during the grievance and arbitration process.

15. Rule 27 of the LAR AAA provides, in part, "[a]n arbitrator or other person authorized by law to subpoena witnesses and documents may do so independently or upon the request of any party."

16. The Hotel also served a subpoena duces tecum upon the Union on December 4, 2015 seeking various types of documentary evidence relating to the incidents at issue and on the first day of the hearing, the arbitrator denied the Hotel's oral motion seeking compliance mistakenly concluding the subpoena was a witness subpoena.

17. The Union admitted it did not provide the evidentiary materials it offered at the hearing in support of the grievance claims (e.g., contemporaneous notes and emails describing the incidents along with pictures and/or video recordings) until the Union first submitted them during the arbitration hearing.

18. Several days before the start of the first day of the arbitration hearing, HRC filed a motion for a sixty-day continuance due to the late disclosures of Union claims along with a motion to limit the scope of the hearing to a several week period based on Rule 5c of the LAR AAA which provides after an arbitrator is appointed, no new or different claim may be submitted except with the consent of the arbitrator and all the parties.

19. Both motions were denied by the arbitrator in the Meyers Award.

20. After indicating on the first day of the hearing that the motion to limit the scope was denied, counsel for Defendant announced on the record "subject to [the Hotel's] previous

motion," Plaintiff and Defendant agreed, for purposes of proceeding with the arbitration hearing, the Union would be allowed to present claims through the conclusion of its case-in-chief.

21. The arbitrator found Rule 5c of the LAR AAA did not apply to bar considering ongoing and continuing violations and further found that the parties' "agreement" referenced above to allow the Union to present claims through the conclusion of its case-in-chief completely resolved any remaining issues raised by the Hotel in its Motion to Limit the Scope of the Hearing and vitiates the application of Rule 5c of the LAR AAA.

22. In his ruling, the arbitrator fails to acknowledge the above "agreement" was subject to the Hotel's previous motion to limit the scope of the arbitration which had by then, already been denied by the arbitrator.

23. By refusing to determine whether the claims were "new or different" under Rule 5c, which is expressly incorporated into the CBA, the arbitrator in the Meyers Award administered his own brand of industrial justice and resulting in the award not drawing its essence from the CBA.

24. The arbitrator ruled he would hear all claims dated fourteen days before the filing of the first grievance and the day the Union rested its case-in-chief on February 23, 2016.

25. Although the arbitrator ruled that the Hotel had adequate time following the conclusion of the Union's case-in-chief and was able to present evidence, rebuttal, and arguments through the final day of hearing on January 18, 2018, the process adopted in this proceeding unduly interfered with and denied the Hotel its due process rights since the delay in Union evidentiary disclosures interfered with the Hotel's ability to gather

evidence and present witnesses with the ability to recall events.

26. The process adopted in the arbitration proceeding also substantially prejudiced the Hotel's ability to cross-examine Union witnesses during the presentation of the Union's case-in-chief.

27. For many claims, the arbitrator faulted the Hotel's defense of the Union claims due to its witnesses' inability to recall or remember an incident, and found the Union's evidence credible and supportive of the claims because the Union presented in support of claims contemporaneous notes and pictures or videos that it first provided to the Hotel when they were introduced by the Union at the arbitration hearing.

28. Portions of the Meyers Award are also repugnant to the National Labor Relations Act ("Act"), 29 U.S.C. §151, *et seq*., and contrary to public policy, particularly Section 8(b)(4)(ii)(D) of the Act which provides in relevant part:

[i]t shall be an unfair labor practice for a labor organization or its agents-- . . . (4) . . . (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is-- . . . (D) forcing or requiring any employer to assign particular work to employees in a particular labor organization . . . rather than to employees . . . in another trade, craft, or class, . . . .

29 U.S.C. §158(b)(4)(ii)(D).

29. In violation of Section 8(b)(4)(ii)(D) of the Act, the Union utilized the grievance process through arbitration to coercively further an unlawful objective by adding to its members' existing scope of work or capturing work exclusively as its own that has been traditionally performed by workers of another class.

30. The Meyers Award, as interpreted by the arbitrator, violates explicit public policy as set

forth in Section 8(b)(4)(ii)(D) of the Act and should be vacated.

31. The arbitrator in the Meyers Award disregarded and failed to address HRC's argument that many of the Union Section 56 claims seek the entry of an award that violates Section 8(b)(4)(ii)(D) of the Act describing the relevancy and utility of relying on the Act in defense of the claims to be limited.

32. In the Kenis Award, the arbitrator found that cooking and "tasks associated with cooking" are a normal and regular part of the Chefs' routine and are tasks that are shared with Cooks which cannot be captured exclusively as the work of Cooks under Section 56 of the CBA.

33. The arbitrator in the Kenis Award also found that a Chef's participation in a dish-up for forty-five minutes is within the scope of a Chef's job duties and is not a violation of Section 56.

34. Section 46(E) of the CBA prohibits an arbitrator from adding to, subtracting from, changing existing wage rates or any of the other terms of the CBA and provides arbitration awards shall be considered final, binding and conclusive on all parties.

35. Since the Union did not timely move to vacate the Kenis Award, the award interpreting the CBA became a binding part of the CBA and should be applied by subsequent arbitrators, particularly since the events at issue in the Kenis Award decided more recent events (February 25, 2016 through September 20, 2016) than the events at issue in the Meyers Award (October 2, 2014 through February 23, 2016).

36. Despite these findings, the Union in the Meyers Arbitration improperly continued to pursue exclusively for Cooks, its bargaining unit members, cooking functions, tasks

associated with cooking, and participation in dish-ups in violation of Section 8(b)(4)(ii)(D) of the Act.

37. Contrary to the earlier Kenis Award finding, the arbitrator in the Meyers Award ruled that Chefs may only occasionally prepare a newly created dish from start to finish as a demonstration for Cooks and may also only participate in a dish-up to show other employees exactly how a dish should look when plated. If, however, Chefs perform these tasks for an "improper purpose" such as to help out or because of inadequate staffing, the arbitrator ruled that performing these tasks would then be in violation of Section 56 of the CBA.

38. The Meyers Award involved the identical parties, an interpretation of the same contract provision, and the same issues and type of work as was involved in the Kenis Award and no Chef or Cook testified on behalf of the Union in support of its claims in the Meyers Award.

39. In his ruling deciding what Chefs were allowed to do and were prohibited from doing, the arbitrator in the Meyers Award was administering his own brand of industrial justice and disregarded the industrial common law—the practices of the industry and the shop—which the arbitrator in the Kenis Award applied when the arbitrator found cooking and tasks associated with cooking for decades have been a normal and regular part of the Chefs' job functions.

40. The inconsistency between the Meyers Award and the Kenis Award describing what cooking and dish-up tasks Chefs are permitted and not permitted to do places the Hotel in the impossible position of being unable to direct Chefs on the scope of their

responsibilities and job assignments.

41. The Hotel's choice of which award to follow comes with a particular hardship if a future arbitrator follows the Meyers Award since that award contains a cease and desist remedy which the arbitrator in the Meyers Award describes as a "grave matter" and warns future Section 56 violations may warrant the imposition of punitive damages.

42. On April 16, 2019, shortly following the issuance of the Meyers Award, the Union filed a Section 56 grievance claiming on April 4, 2019 and ongoing and continuing, "Chef is Performing Bargaining Unit Work," ignoring the Kenis Award which found chefs performing cooking tasks and tasks associated with cooking were permitted under Section 56 of the CBA.

43. Both in an earlier Section 56 arbitration award between the same parties dated March 1, 2015 decided by Arbitrator Kenis and in the Kenis Award, Arbitrator Kenis also ruled that during the time the Hotel was hosting the TelCap convention, the demands of the group required the Hotel to convert guest sleeping rooms into conference rooms and Hotel employees worked at full capacity ("all hands are on deck") with many bargaining unit employees picking up extra shifts and overtime.

44. In both the March 1, 2015 award and the Kenis Award, Arbitrator Kenis found that events such as TelCap, where "the full resources of the Hotel are not enough," constituted an emergency under Section 56 permitting supervisors and managers to perform work normally performed by bargaining unit workers.

45. Despite these two arbitration rulings finding TelCap was an emergency under Section 56 of the CBA, the Union, in violation of Section 8(b)(4)(ii)(D) of the Act, continued to use

the grievance and arbitration process in the Meyers Arbitration to attempt to prohibit supervisors from performing bargaining unit work during TelCap.

46. The arbitrator in the Meyers Award found that the arbitrator's finding in the Kenis Award that TelCap constitutes an emergency under Section 56 was "palpably erroneous."

47. Both the March 1, 2015 award and the Kenis Award interpreting the CBA and finding that the TelCap convention constitutes an emergency under Section 56 became a binding part of the CBA, with the March 1, 2015 award being confirmed by the Union with a federal court judgment (case number 15-cv-04507 ).

48. In addition, the Meyers Award ruling places HRC in an impossible position of deciding which of the two inconsistent rulings apply when TelCap is using the hotel and retroactively finds the Hotel violated Section 56 during TelCap when an earlier final and binding arbitration award concluded it was not a violation of Section 56 of the CBA for supervisors to perform work normally performed by bargaining unit workers during TelCap.

49. The arbitrator in the Meyers Award found slightly over half the claims were sustained (105 claims were sustained; 104 claims were denied).

50. However, eleven of the sustained claims were for the Hotel's violation of Section 56 of the CBA during TelCap when before the issuance of the Meyers Award, there was a final and binding arbitration award, which ultimately was confirmed by the Union with a federal court judgment, allowing supervisors to perform the work during TelCap.

## COUNT II
## SUIT TO CONFIRM KENIS AWARD

51. Plaintiff incorporates paragraphs 2 through 9, 32 and 42 as paragraph 51 as if fully alleged herein.

52. In the Kenis Award, the arbitrator awarded HRC $700.00 as reimbursement of the Hotel's payment of the Union's portion of a postponement fee charged by the arbitrator as a result of the arbitrator postponing an earlier arbitration hearing due to the Union's failure to timely provide requested information to HRC. Ex. B p. 120.

53. The CBA provides that expenses incident to arbitration shall be borne equally by the parties. Ec. Section 46(E) p. 41.

54. Despite multiple requests from the Hotel to the Union seeking payment of the postponement fee awarded to HRC in the award, the Union refuses pay HRC the $700.00.

55. In addressing the Hotel's procedural arbitrability arguments, the arbitrator in the Kenis Award adopted the reasoning of two other arbitrators and ruled that rather than dismiss a grievance that does not contain all of the information the Hotel needs to investigate the grievance, the better option is the Union must supplement the grievance with the necessary essential information upon request by the Hotel (Ex. B p. 29) which the Union has failed to do.

56. The Kenis Award fully incorporated into the Award section "as if fully rewritten" the arbitrator's reasoning deciding the grievance was arbitrable

57. Despite the finality of three arbitration awards commanding that the Union "must" supplement deficient grievances with essential information upon request by HRC, the

Union continues to fail to provide adequate responses to the Hotel's information requests including, but not limited to, the following grievances:

- 20160934-during ITW HK employees were not scheduled for available hours that outside employees worked.
- 20181500- ongoing and continuing Food & Beverage management was doing bargaining unit work.
- 20182313-third party seen emptying the trash cans and replacing them with new bags.
- 20182647-company improperly scheduled and increased their workload.
- 20190027- on 01/03/19 the grievant was not improperly paid for a function that occurred on 12/15/18.
- 20190206 - ongoing and continuing overwork precluding grievant from taking breaks due to the excessive workload.
- 20190492- unjust discipline for taking a break.
- 20190541-grievant was improperly scheduled by seniority.
- 20190672-grievant was improperly paid when he was a lead.
- 20190781-grievant's vacation has been improperly paid.
- 20190784-server's attempt to pass a shift to grievant was denied by the office and given to another employee.

WHEREFORE, HRC respectfully requests this Court to issue an Order as follows:

    A.    Vacating the Meyers Award;

    B.    Confirming the Kenis Award as a final and binding decision;

    C.    Granting such further relief as the Court deems just and proper.

Respectfully submitted,
**Hyatt Corporation d/b/a Hyatt Regency Chicago**

By: /s/Peter Andjelkovich
 One of its attorneys.

Peter Andjelkovich, Esq.
Bradley Wartman, Esq.
Peter Andjelkovich & Associates
200 West Madison Street, Suite 2100
Chicago, IL 60606
312/782-8345